Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7754 | **DATE** | 10/6/2003 |
| **CASE TITLE** | Plump vs. Kraft Food | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] As further set out in the Memorandum Opinion and Order, Defendant's Motion for Sanctions, or in the Alternative, to Compel [dkt 27] is granted in part and denied in part as to the motion for sanctions and granted as to the motion to compel.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | OCT 6 2003 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 35 |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 10/6/2003 | |
| GR | courtroom deputy's initials | date mailed notice GR mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL PLUMP<br>Plaintiff, | )<br>)<br>) | |
| v. | ) | Case No. 02 C 7754 |
| KRAFT FOODS NORTH AMERICA, INC.<br>Defendant. | )<br>)<br>)<br>)<br>)<br>) | Judge Joan Gottschall<br>Magistrate Judge Geraldine Soat Brown |

OCT 6 - 2003

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

Before the court is a motion for sanctions, or, in the alternative, to compel, filed by defendant Kraft Foods North America, Inc. ("Kraft") against plaintiff Daniel Plump. [Dkt 27.] The motion stems from Plump's alleged failure to obey an order issued by this court on May 15, 2003 [dkt 25] and represents, Kraft argues, the culmination of a pattern of disobedience characterized by Plump's continued failure to turn over responsive documents, his refusal to answer deposition questions ordered by the court, his adherence to legal and factual theories that are demonstrably inaccurate, and his attorney's altering of his story regarding the source of a document Plump produced. The court held oral argument on Kraft's motion on September 19, 2003 at which Plump and his attorney failed to appear. [Dkt 34.] After reviewing the briefs submitted by the parties and considering Plump's history in prosecuting this case, the court agrees that sanctions are warranted.

### Factual Background

Plump was terminated from his employment with Kraft in June 2002. (Compl. ¶ 26.) [Dkt

1.] He sued Kraft for race and gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981. Kraft issued discovery requests to Plump in December 2002. Among its requests, Kraft asked that Plump produce all documents that refer or relate in any way to his employment and all documents that refer or relate in any way to Plump's claim for damages. (Def.'s Mem. Supp. Mot. Compel, Ex. A.) [Dkt 21.] In a follow-up letter in January 2003, Kraft also requested that Plump produce copies of all documents referenced in his Fed. R. Civ. P. 26(a) initial disclosures including, *inter alia*, documents related to Plump's exercise of stock options. (Def.'s Mem. Supp. Mot. Compel, Ex. B.) Plump produced certain documents and Kraft deposed him in February 2003. During the deposition, Plump testified about the existence of certain documents that he had not produced, including a binder of documents regarding the stock options and a retainer agreement he had with his attorney. After several requests by Kraft, Plump subsequently produced a three-page document related to his exercise of the stock options, which Kraft Bates labeled P 183-P185.[1] However, he refused to sit for a continuation of his deposition – which Kraft had expressly held open – to answer questions about the document. He also did not produce any of the binders regarding the stock options about which he had testified. It is these documents, as well as several disputes concerning Kraft's employee handbook, that form the basis for an earlier motion by Kraft to compel, as well as the present motion.

1. *Employee Handbook*

The parties agree that Kraft's on-line employee handbook and other employment policies are accessible only to current employees from an internal Kraft human resources website. (*See, e.g.*, Pl.'s Answer Mot. Sanctions at 4.) [Dkt 31.] One of Plump's original allegations was that the Kraft

---

[1] Plump did not Bates label his documents prior to producing them.

2

employee handbook in effect at the time of his termination constituted an employment contract between him and Kraft. The District Judge dismissed Plump's § 1981 contract claim based on the handbook, however, because Plump also alleged that he did not have access to the website from which the handbook and policies could be viewed or printed.[2]

The handbook is still relevant to the present motion, however. When Kraft's attorney originally deposed Plump in February, 2003, she marked as an exhibit a hard copy of the company's on-line handbook, which had the date 11/25/2002 printed at the bottom of every page. On April 16, 2003, Plump's attorney deposed Kraft employee John Sacksteder and marked as an exhibit another hard copy of the on-line handbook, this one with the date 6/11/2002 in the bottom corner of every page ("6/11/2002 handbook"), but otherwise identical to the document Kraft's attorney used at Plump's deposition. Plump had not produced that document to Kraft in response to its request for all documents that related to his employment. When Kraft's attorney asked about the source of the 6/11/2002 handbook, Plump's attorney responded in a letter that the "documents submitted to Mr. Sacksteder was a copy of a document (sic) submitted to Mr. Plump by your office in his deposition." (Def.'s Mem. Supp. Mot. Compel, Ex. I.) Kraft has consistently denied that it produced the 6/11/2002 handbook to Plump. (Def.'s Reply Supp. Mot. Compel, Ex. L.) [Dkt 20.]

2.   *Motion to Compel*

In April 2003, Kraft filed a motion to compel Plump to produce all documents requested by Kraft that had not yet been produced, and also a motion to compel Plump to sit for a continued

---

[2] *See Plump v. Kraft*, No. 02 C 7754, 2003 WL 22057157 (N.D. Ill., Sept. 2, 2003) [dkt 32], *citing to Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (1987), and finding that Plaintiff's admission that he never saw a copy of the on-line handbook defeats his claim that it constituted a contract because the handbook was not disseminated in such a manner that Plump was aware of its contents and could reasonably have believed it constituted an offer of employment.

deposition, during which Kraft could question him about P 183-185 and the 6/11/2002 handbook. In objecting to the motion, Plump disputed that stock option materials he produced as P 183-185 and the 6/11/2002 handbook were encompassed by any requests for production Kraft served prior to Plump's first deposition. (Pl.'s Answer Mot. Compel.) [Dkt 18.] Plump's attorney also reiterated his earlier contention that Plump had obtained the 6/11/2002 handbook from Kraft at Plump's deposition. (*Id.* ¶ 7.) As an exhibit to its reply to the motion, Kraft attached an affidavit from one of its attorneys averring that she had never seen the 6/11/2002 handbook prior to Plump's production of it at Mr. Sacksteder's deposition. (Def.'s Reply Supp. Mot. Compel, Ex. L.)[3]

On May 15, 2003, this court held a lengthy hearing on Kraft's April motion to compel, and also a motion to compel brought by Plump. There was extensive argument from counsel for both parties. The parties disputed so bitterly about whether responsive documents had been produced that the hearing was recessed for a brief time and each party was ordered to bring in a copy of every document it had produced to the other side.[4] [Dkt 24.]

During the hearing, counsel for Plump stated for the first time that Plump got the 6/11/2002 handbook from Kraft when one of Kraft's attorneys left it on a desk at Mr. Sacksteder's deposition. Further, in response to questions from the Court, Plump's attorney represented that Plump had

---

[3] Kraft explained to Plump in its answers to Plump's interrogatories that the dates at the bottom of handbooks represent the dates they were printed off the website, and that the handbook bearing the date 11/25/2002 (which is otherwise identical to the 6/11/2002 handbook), was in effect throughout 2002. (Deft's Reply Supp. Mot. Sanctions, Ex. C.) [Dkt 33.] Plump has continued to argue – most recently in response to the current motion for sanctions – that the dates reflect when the handbooks were issued by Kraft and thus neither document was in effect during Plump's employment. (Pl.'s Answer Mot. Sanctions at 3.)

[4] Prior to the hearing, Plump had produced a total of 185 documents; the court marked an unsigned copy of Plump's retainer agreement with his attorney as P 186 at the hearing. Kraft produced 774 documents.

4

produced every responsive document in his possession; the court warned him that failure to produce responsive documents could result in his being barred from using them later in the case. At the conclusion of the hearing, Kraft's motion was granted and Plump was ordered to sit for a continued deposition "at which the defendant may inquire about the following: Documents Bates numbered P 183-186, [and] the document that was marked as exhibit 2 at Mr. Sacksteder's deposition. . ." (Order, May 15, 2003 .) The only additional documents that Plump was ordered to produce concerned his search for employment after leaving Kraft, since he had informed the court at the hearing that he did not have any other responsive documents.

3.  *Plaintiff's Second Deposition*

Kraft continued Plump's deposition on June 9, 2003. Plump testified that he did not give the 6/11/2002 handbook to his attorney. (Def's Mem. Supp. Mot. Sanctions, Ex. A, Plump Dep. at 361-2.) When Kraft's counsel asked Plump if he knew where his attorney got the 6/11/2002 handbook, Plump's counsel instructed him not to respond on the grounds that the questions were outside the scope of the court's May 15, 2003 order and that they implicated the attorney-client privilege. (*Id.* at 361-362, 377-380.) Further, Plump's attorney directed him not to answer questions about P 183-185 on the grounds that the questions were outside the court's order and that the questions were improper because "[i]t was a test of the plaintiff's acumen in deciphering an unidentified third party's analysis of information . . ." (Pl.'s Answer Mot. Sanctions at 3.) At his first deposition, Plump had stated that he was unable to answer questions about a document Kraft showed him, which purportedly represented the stock options Plump had received, without comparing Kraft's document to his own materials. (Def.'s Mem. Supp. Mot. Compel, Ex. E, Plump Dep. at 280-81.) However, it was precisely such a comparison between documents previously produced by Kraft and P 183-185

5

(documents subsequently produced by Plump), that he refused to answer during his second deposition.

Despite his statements to the court at the May hearing, Plump testified at his continued deposition about certain documents he possessed that he had not produced to Kraft, including a signed version of his retainer agreement with his attorney and binders of documents related to Kraft's stock option plan which he testified would show the value of options he had lost as a result of his termination. Plump testified that the documents in a binder he had at home would further substantiate his expectation that, based on his performance, he would receive options and give "a real keen sense" of the value of the options that he lost. (Def.'s Mem. Supp. Mot. Sanctions, Ex. A, Plump dep. at 403-05.) The documents in that binder had not been produced to Kraft because Plump and his attorney continued to take the position that the binders had never been requested. (*Id.* at 408, 434) They further contended, contrary to Plump's testimony, that the documents did not relate to the case. (*Id.* at 435.) Further, Plump's attorney refused to instruct his client not to destroy the documents pending a ruling on their production by the court. (*Id.*)

Kraft has asked that the court impose several different sanctions against Plump. It asks that Plump be: (1) barred from making any arguments that relate in any way to the 6/11/2002 handbook;[5] (2) precluded from seeking damages relating in any way to stock options; (3) precluded from using the fact that he received stock options as support for any argument concerning his performance while employed by Kraft; (4) barred from entering the documents labeled P 183-185 and the 6/11/2002 handbook into evidence; and (5) precluded from obtaining attorneys' fees. In the alternative, Kraft

---

[5] Kraft also asked that Plump be precluded from basing his Section 1981/breach of contract claim on Kraft's employee handbook; that issue was mooted by the District Judge's September, 2, 2003 opinion.

asks that the court order Plump to produce all requested documents in his possession and to sit for a third deposition concerning the 6/11/2002 handbook, the documents labeled P 183-185, and the stock option binders.

## Analysis

1. *Legal Standard*

The importance of full and fair discovery to the resolution of litigation in the federal courts cannot be underestimated. "In our system of civil litigation, the discovery process is the principal means by which lawyers and parties assemble the facts, and decide what information to present at trial." *Danis v. USN Communications, Inc.*, No. 98 C 7483, 2000 WL 1694325 at * 1 (N.D. Ill. October 23, 2000)(Schenkier, M.J.). Thus, several of the federal rules governing the discovery process provide for sanctions against any party that shirks its obligations.[6]

Because this court previously ordered Plump to sit for an additional deposition, and has warned him about the failure to produce responsive documents in his possession, the question on the present motion is whether it is appropriate to impose additional sanctions pursuant to Fed. R. Civ. P. 37(b) for failure to follow a court order. The sanctions authorized by Rule 37(b)(2) include:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be

---

[6] Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery of any matter that is relevant to the claim or defense of any party. Rule 30(d)(3) enforces that obligation with regard to the taking of depositions, allowing the court to impose on the responsible party an appropriate sanction, including reasonable costs and attorney's fees, "[i]f the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent." If a party violates Rule 34, regarding the production of documents and things, a party may move for sanctions under Rule 37, which governs motions to compel as well as the imposition of more severe sanctions for the failure of a party to obey a court order. In addition to the specific authority to impose sanctions set out in Rule 37, a court also has inherent authority to impose sanctions for bad faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

> taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters into evidence; . . .

Rule 37(b) also provides for the imposition of attorney's fees and costs incurred by the other party because of the failure to adhere to the order, unless the court finds the failure was substantially justified. Wilfulness, bad faith, or fault on the part of the disobeying party justify imposition of sanctions. *See, e.g., Ladien v. Astrachan*, 128 F.3d 1051, 1057 n.5 (7th Cir. 1997).

In this case, the court finds that it is appropriate to impose Rule 37 sanctions as well as sanctions pursuant to Rule 30 against Plump because he violated the May 15, 2003 order concerning the scope of his deposition, and his violation demonstrated bad faith and wilfulness. Specifically, Plump disregarded the court's order regarding the scope of the deposition without any reasonable justification and persisted instead in making arguments the court has previously rejected. Further, Plump misrepresented the fact that he possessed additional responsive documents, changed his story regarding the source of the 6/11/2002 handbook, and generally impeded Kraft's fair examination of him.

2.   *Sanctions for Violation of the May 15, 2003 Order*

During the hearing on Kraft's motion to compel, which resulted in the court's issuance of the May 15, 2003 order, the parties discussed at length the source of the 6/11/2002 handbook as well as the stock option documents numbered P 183-185 which Plump produced after his February

deposition.[7] The court questioned Plump specifically about whether he possessed additional documents related to the stock option plan, since such documents would be responsive to Kraft's discovery request for materials related to Plump's claim for damages.[8] There is no doubt that the May 15, 2003 order requiring Plump to sit for another deposition squarely included these topics, and that the specific questions posed to Plump by Kraft's attorney were proper and within the order's scope. Plump's argument that it was improper to ask him to compare Kraft's calculation of the stock options granted to him with Plump's own documents is disingenuous at best; the questions did not require Plump to authenticate documents or perform a business analysis, they merely sought to learn how he viewed his alleged damages based on his receipt of stock options. In the previous session of his deposition, Plump testified that he could answer questions related to Kraft's calculation if he could compare it to documents he had at home. Plump subsequently produced P 183-185 and the second deposition was ordered to permit that inquiry.

Similarly, questions about the source of the 6/11/2002 handbook did not implicate the attorney-client privilege. The Seventh Circuit applies the following rule to determine whether the attorney-client privilege protects particular communications: "1) where legal advice of any kind is sought 2) from a professional legal advisor in his capacity as such, 3) the communications relating to that purpose, 4) made in confidence 5) by the client, 6) are at his instance permanently protected 7) from disclosure by himself or by the legal advisor, 8) except where the privilege has been

---

[7] During that discussion Plump's attorney stated that he received the 6/11/2002 handbook from a Kraft attorney during Mr. Sacksteder's deposition, in direct contravention to his earlier explanation that he got the document during Plump's deposition.

[8] The stock option documents are also responsive to Kraft's request for all documents that relate to Plump's employment, since he testified they are evidence of his good performance prior to his termination.

waived." 8 WIGMORE § 2292; *Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314, 319 (7th Cir. 1963). In asking Plump if he knew how his attorney obtained the 6/11/2002 handbook, Kraft was not delving into any issue involving legal advice, particularly because Plump testified that he did not believe that he had been the one to give his attorney the document. Therefore, it was inappropriate for Plump's attorney to instruct him not to respond.[9]

### 3. *Plump's Failure to Produce Responsive Stock Option Documents*

Not only did Plump violate this court's order by refusing to answer questions posed to him during his second deposition, but he misrepresented to the court the fact that he had not produced all responsive documents regarding his receipt of stock options. The court warned Plump at the hearing that if he possessed documents that he had not produced, he would be barred from using them to further his case.

### 4. *Imposition of Sanctions*

Sanctions are clearly warranted here, but the harsh sanction of dismissal of a claim or defense should be reserved for "extreme circumstances." *Danis*, 2000 WL 1694325 at *31, *citing Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir. 1981). Thus, *at this time*, the court declines to preclude Plump from making any claim for damages relating to stock options or any claim for attorneys' fees. However, the following sanctions are imposed:

1. Plump is barred from using the 6/11/2002 handbook or any documents not produced to Kraft by May 15, 2003 as evidence in this case, whether on his direct case, for impeachment, or in

---

[9] It was also inappropriate for Plump to refuse to answer questions about whether he believed the 6/11/2002 handbook constituted a contract between him and Kraft. Although this inquiry has been mooted by the district court's order dismissing part of the Section 1981 claim, it does not alter the fact that Plump wasted time and money by refusing to respond to questions he was ordered to answer by this court.

rebuttal, or to make any arguments based on those documents at any hearing or trial in this case, or in connection with any motion. This order is both a sanction for Plump's violation of the May 15, 2003 order and his failure to produce the stock option binders to Kraft, and a consequence of Plump's counsel's representation to the court on May 15, 2003 that all documents requested by Kraft or required by Rule 26(a)(1) had been produced by that date. *See* Fed. R. Civ. P. 37(c)(1).

However, this ruling does not preclude *Kraft* from being able to use any of the information which this order bars Plump from using. Because the material, including the binders, is, by Plump's own testimony, relevant to the issues of the case, Plump's failure to produce it cannot deprive Kraft of its right to obtain it and use it. Thus, Plump is ordered to produce no later than October 20, 2003 each of the stock option binders, including each page thereof, about which he testified at his deposition. *See, e.g.*, Plump's testimony that he has a binder for each of four or five years. (Def's Mem. Supp. Mot. Sanctions, Ex. A, Plump Dep. at 408-09.)

2. Plump must sit for a third deposition at which Kraft may question him about any matters related to the 6/11/2002 handbook, P 183-185, and the additional documents to be produced pursuant to this order. That deposition must be held at a mutually agreeable time no later than November 1, 2003.

3. Pursuant to Fed. R. Civ. P. 37(b)(2) and 30(d)(3), Plump must also pay Kraft the attorneys' fees and costs that Kraft incurred in preparing, filing and arguing the present motion, and the costs and fees incurred by Kraft in taking the second session of Plump's deposition on June 9, 2003. Plump has presented no substantial justification for his failure to comply with the May 15, 2003 order or his misrepresentation that all documents sought by Kraft had been produced, notwithstanding the ample opportunity given Plump's counsel to present his arguments during the

May 15, 2003 hearing on Kraft's motion to compel, in Plump's response to the motion for sanctions, and at the scheduled hearing on Kraft's motion for sanctions, which Plump's counsel failed to attend. Kraft's counsel shall serve Plump's counsel with a statement of such fees and costs no later than October 20, 2003 specifying the date, time and nature of the services rendered and the applicable billing rate and identifying all costs. This includes time for legal and factual research but does not include any time for interoffice consultation with other lawyers. By November 1, 2003, Plump must serve a statement of any specific item disputed and pay in full any amount not disputed. The parties shall comply with Local Rule 54.3 (e) and (f) with respect to any disputed item.

One other issue must be addressed. In his response brief, Plump insinuated that this court would be pre-disposed to believe the attorneys for Kraft over Plump's attorney because of the respective races and genders of the lawyers. (Pl.'s Answer Mot. Sanctions at 6.) Such a remark is not only false, it is entirely inappropriate and has no place in a filing to the court. Plump and his attorney are cautioned not to make unfounded statements which call into question the integrity of the court or opposing counsel; such behavior in the future may result in additional sanctions.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

October 6, 2003